UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

VINEET PAREKH, et al.,

Plaintiffs,

v.

AVALARA INC., et al.,

Defendants.

Case No. 2:22-cv-01580-TMC

ORDER GRANTING MOTION FOR CLASS CERTIFICATION

## I. INTRODUCTION

Plaintiffs were investors in Defendant Avalara, Inc. ("Avalara"), a company that develops tax compliance software, who allege that Avalara and its officers understated the company's success and caused it to be sold to Vista Equity Partners Management, LLC ("Vista") in October 2022 at $93.50 per share, a price Plaintiffs allege was below the fair value of the company. Plaintiff Martin Sohovich moves for class certification and to designate himself as the class representative. Dkt. 109. For the reasons set forth below, the Court GRANTS Sohovich's motion.

## II. BACKGROUND

### A. Avalara's business operations

Avalara "is a leading provider of cloud-based tax compliance software that automates the routine transactional tax work traditionally performed by a company's tax or legal department." Dkt. 57 ¶ 2. "Instead of independently researching tax rules, manually computing transaction taxes, creating DIY tax calculation systems, and submitting individual checks to numerous jurisdictions, Avalara's customers make a single ACH payment to a single account, with Avalara's system then taking care of the returns and remittances." *Id.* ¶ 39. Avalara generates revenue by charging a subscription fee for its services, with subscription income representing about 90 percent of the company's revenue. *Id.* ¶ 42. The company maintains 19,000 active customers across 95 countries and a variety of industries. *Id.* ¶ 38.

Defendant Scott McFarlane founded Avalara and was the company's Chairman and Chief Executive Officer at all relevant times. *Id.* ¶ 25. Each of the remaining Defendants—Bruce Crawford, Marion Foote, Edward Gilhuly, William Ingram, Marcela Martin, Tami Reller, Brian Sharples, Rajeev Singh, Srinivas Tallapragada, and Kathy Zwickert—were also on Avalara's Board of Directors (the "Board" or "Individual Defendants"). *Id.* ¶¶ 26–35. Ross Tennenbaum acted as the company's Chief Financial Officer and Amit Mathradas was its President and Chief Operating Officer. *Id.* ¶¶ 6, 58. Neither Tennenbaum nor Mathradas is a defendant in this case.

Avalara experienced significant growth in customer accounts and revenues between 2015 and 2021 "due to diversification of its customer base and government mandates requiring e-invoicing, insulation from macroeconomic risk due to Avalara's business model, and stellar growth and opportunities in upsell bookings." *Id.* ¶¶ 3–4. The rate of growth also increased steadily, with a compound annual growth rate ("CAGR") of 33.6 percent from 2015 to 2021 and an annual growth of 39.6 percent from 2020 to 2021. *Id.* ¶¶ 43–44. According to Plaintiffs, this

period was characterized by unfettered optimism and Defendants' narrative that "tremendous growth potential still lay ahead." *Id.* ¶ 49. This narrative continued into mid-2022 as Defendants expressed that Avalara was a "low-beta business" not susceptible to macroeconomic shocks and that revenues would grow consistently through at least 2025. *Id.* ¶¶ 52, 61–64. McFarlane and Tennenbaum frequently stated that the company would continue to expand via organic, internal growth as well as inorganic growth driven by acquisitions. *Id.* ¶ 48.

Avalara's stock price dropped from $165 on December 31, 2020, to $71 on June 30, 2022—a fact Plaintiffs attribute to poor "macroeconomic trends rather than a decline in the Company's performance." *Id.* ¶¶ 65–66. "These macroeconomic factors include[d] rising interest rates, inflation, supply chain disruptions and concerns over consumer spending." *Id.* ¶ 65. But even as its stock price dropped, its revenues grew from $380 million to $790 million over the same period. *Id.* ¶ 66. Through May and June of 2022, Tennenbaum, McFarlane, and Mathradas touted Avalara's continued momentum despite the economic downturn, focusing on the company's long-term projected growth. *Id.* ¶¶ 57–61.

**B. Vista expresses interest in purchasing Avalara.**

In April 2022, Defendants commenced a sale process for Avalara "in response to interest expressed by four private equity firms . . . seeking to capitalize on a downturn in Avalara stock driven by macroeconomic trends." *Id.* ¶ 65. Plaintiffs allege that, "in response to those initial overtures of interest, Defendant McFarlane and the Board initiated a sales process for the Company during a time of significant market volatility and depressed financing conditions, making it difficult for the Company to achieve a price reflective of its intrinsic value." *Id.* ¶ 67. Plaintiffs further claim that "Defendants did not run the sales process with an eye toward maximizing sale price, but rather with an eye toward maintaining job security." *Id.*

Plaintiffs assert that the sale process was a "sham" because (1) Avalara only negotiated with eight private equity firms, six of whom initiated contact; (2) Avalara's financial advisor, Goldman Sachs ("Goldman"), "received $80 million from Vista and Vista affiliates over the last two years and stood to receive over $70 million in fees upon the closing of a deal between Avalara and Vista"; (3) Goldman did not reach out to any strategic acquirors that may have jeopardized the job security of McFarlane or other senior executives; and (4) two board members "identified as independent," Martin and Singh, "in fact had affiliations with companies that Vista either controls or previously acquired." *Id.* ¶ 68.

Ultimately, "given the deleterious macroeconomic environment, interest in Avalara was limited [and] [o]nly Vista submitted a final bid." *Id.* ¶ 69. The Board approved the sale to Vista and sent it to a shareholder vote, publishing a proxy statement (the "Proxy") on September 12, 2022, to solicit shareholder approval. *Id.* ¶¶ 1, 13. Plaintiffs allege that the Proxy contained "numerous false and misleading statements" that violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Securities and Exchange Commission ("SEC") Rule 14a-9. *Id.* ¶ 1. Specifically, Plaintiffs claim that the Proxy presented "artificially depressed" and "inaccurate" projections which "paint[ed] a falsely pessimistic picture" of Avalara. *Id.* ¶ 5.

**C. The Projections and the Proxy**

In early May 2022, McFarlane and other members of Avalara's senior management prepared forecasts for fiscal years 2022–2025 (the "May Projections"). *Id.* ¶ 70. Plaintiffs allege that the May Projections were based on underlying assumptions about Avalara's risks that "directly contradicted prior numerically specific statements on earnings calls." *Id.* (emphasis omitted). For example, the May Projections assumed that Avalara would enjoy "slower than expected growth in both new bookings and upsell bookings" in Q1 2022. *Id.* (emphasis omitted).

This contrasted with an Analyst Day presentation and May 5, 2022 earnings call that advised investors of "25% year over year growth in upsell bookings in Q1 2022" which showed "really good momentum" that the company was "really happy with." *Id*. The May Projections also did not include "any projected *inorganic* revenue growth," even though Avalara had previously included inorganic growth in its guidance and stated that inorganic growth was a key part of its business strategy. *Id*. ¶ 71.

On July 18, 2022, Avalara's management presented another set of projections to the Board (the "July Projections"). *Id*. ¶¶ 75–76.[1] The projections revised Avalara's estimated revenue down from the May Projections as follows:

**Projected Revenue – Table of figures (*in thousands*)**

| | 2022E | 2023E | 2024E | 2025E |
|---|---|---|---|---|
| May Projections (27.64% Rev. CAGR) | $904,000 | $1,160,000 | $1,475,000 | $1,855,000 |
| July Projections (26.56% Rev. CAGR) | $869,000 | $1,106,000 | $1,405,000 | $1,793,000 |

*Id*. ¶¶ 76–77, 102. Plaintiffs claim that the July Projections were misleading for the same reasons as the May Projections, but also because they reduced revenue projections further based on the false premises (1) that Q2 2022 results fell below management's expectations, even though the reported revenue was within the range that management provided in May 2022, *id*. ¶¶ 76, 98; and (2) that Avalara would experience a significant drop in revenue from its main European partner ("Partner A"), even though Partner A "accounted for an insignificant percentage of Avalara's overall revenue." *Id*. ¶¶ 54–55, 98.

Plaintiffs allege that the Proxy was materially misleading because it contained the May and July Projections and false justifications for the Projections. *Id*. ¶¶ 111–114. Plaintiffs also

[1] Plaintiffs' complaint alleges that Avalara presented the July Projections to the Board on July 18, 2018, not 2022, but this appears to be a typographical error. Dkt. 57 ¶ 75.

claim that the Proxy falsely (1) overestimated macroeconomic risks to the company; (2) overestimated "reductions in regulatory and compliance requirements . . . in non-U.S. jurisdictions" that would reduce demand for Avalara's services; (3) represented that the Board approved the merger because Avalara's offered consideration of $93.50 per share constituted a "significant premium" and "an attractive value" for the company. *Id.* ¶¶ 114, 119. Plaintiffs allege that Avalara then filed an investor presentation on September 23, 2022, which repeated these same alleged misrepresentations. *Id.* ¶ 115.

Lastly, Plaintiffs allege that Avalara made materially misleading statements in its Schedule 14A dated September 30, 2022. *Id.* ¶ 116. There, the company stated that Institutional Shareholder Services ("ISS"), "a leading independent proxy advisory firm," had recommended shareholders vote in favor of the pending transaction with Vista. *Id.* ISS's complete report, however, gave only "cautionary" support for the sale that was flanked by important caveats. *Id.* (emphasis omitted). For example, the ISS report found that the merger consideration was a "substantial discount to [Avalara's] historic trading levels" and that the company had "a strong market position" and appeared like it would "remain viable in the medium to long term." *Id.* The ISS report also found the "shift in narrative" from Avalara's management "concerning, with a whiplash turn from positive comments . . . at the June investor day to current worries about" the company's growth. *Id.* ¶ 117. ISS recommended voting against the golden parachute suggested in the Proxy, which proposed giving McFarlane a total of $30 million in the transaction. *Id.* ¶¶ 117–18. Plaintiffs assert that Avalara's Schedule 14A included ISS's overall recommendation and selectively picked four quotes from the ISS report but did not provide investors with the complete report or disclose ISS's negative statements. *Id.* ¶ 116.

**D. Shareholders approve the sale to Vista and Plaintiffs sue.**

On October 14, 2022, Avalara held a shareholder vote to approve the sale of the company to Vista at $93.50 per share. *Id.* ¶¶ 1, 15. A majority of shares voted in favor of the proposal, with 33.8 percent of shares voting against it, abstaining, or not represented at the vote. *Id.* ¶ 16. The transaction closed on October 19, 2022. *Id.* ¶ 17.

Plaintiffs filed this suit on November 4, 2022, alleging that Avalara and the Board violated Section 14(a) of the Exchange Act and SEC Rule 14a-9 when they published a Proxy advocating for the sale of the company to Vista for $93.50 and containing materially misleading information that downplayed Avalara's success and projected growth. *Id.* ¶¶ 136–45; *see* Dkt. 1. Plaintiffs also allege that the Individual Defendants are liable under Section 20(a) of the Exchange Act as the "controlling persons" of Avalara. *Id.* ¶¶ 146–52.

Plaintiff Sohovich held 3,800 shares of Avalara common stock at the close of the shareholder vote. *Id.* ¶ 23. On February 3, 2023, District Judge Marsha J. Pechman granted Sohovich's motion to be appointed as lead plaintiff. Dkt. 31. Judge Pechman reasoned that Sohovich "ha[d] the largest financial interest of the potential lead plaintiffs" and appeared to satisfy the typicality and adequacy requirements of Federal Rule of Civil Procedure 23(a). *Id.* at 3. Judge Pechman found that Sohovich made a preliminary showing as to typicality and adequacy because he "aver[red] that he will prosecute this action on behalf of the class and oversee the work of his chosen counsel," and Judge Pechman was "unaware of any reason why his claims would not be typical of the proposed class." *Id.* Judge Pechman also granted Sohovich's request to appoint Pomerantz LLP as lead counsel. *Id.* at 5.

Plaintiff Sohovich filed the present motion on March 6, 2026. Dkt. 109. Sohovich asks the Court to certify him as the class representative and Pomerantz LLP as class counsel. *Id.* at 7. He proposes the following definition for the class:

> All persons and entities who held shares of Avalara, Inc. ("Avalara") common stock on the September 8, 2022 record date, who were entitled to vote on the Merger at the Company's Special Meeting of Shareholders on October 14, 2022, and whose shares were acquired by Vista for $93.50 per share on October 19, 2022.

*Id*. at 8. The proposed definition excludes "(a) Defendants; (b) any current or former officers or directors of Avalara; (c) the immediate family members of any Defendant or any current or former officer or director of Avalara; and (d) any entity that any Defendant owns or controls, or owned or controlled during the Class Period." *Id*.

Defendants filed an opposition on April 17, arguing that (1) Sohovich's claims are not typical of the proposed class because he is a former Avalara employee, he was categorically opposed to any sale of Avalara, and he was going to vote against the merger regardless of any statements in the Proxy; (2) Sohovich is an inadequate class representative because he is not sufficiently involved in or informed about this case; and (3) questions of law or fact common to class members do not predominate over questions affecting only individual members because Sohovich's proposed damage formula is incapable of measuring damages on a class-wide basis. Dkt. 112 at 12, 15–23. Sohovich replied on May 1. Dkt. 115.

## III. LEGAL STANDARDS

### A. Class certification and Rule 23

The class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (quoting *Califano v. Yamasaki,* 442 U.S. 682, 700–01 (1979)). To justify such a departure, "a class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *Id.* at 348–49 (quoting *E. Tex. Motor Freight Sys., Inc. v. Rodriguez,* 431 U.S. 395, 403 (1977)).

Federal Rule of Civil Procedure 23 is designed to protect the interests of those class members. *Id.* at 345. "Rule 23(a) ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate." *Id.* at 349. Under Rule 23(a), the party seeking certification must show that

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

*Mansor v. U.S. Citizenship & Immigr. Servs.*, 345 F.R.D. 193, 202–03 (W.D. Wash. 2023) (quoting Fed. R. Civ. P. 23(a)). "The Rule's four requirements—numerosity, commonality, typicality, and adequate representation—effectively limit the class claims to those fairly encompassed by the named plaintiff's claims." *Dukes*, 564 U.S. at 349 (internal quotation marks omitted) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982)).

If a proposed class satisfies Rule 23(a), the class must then also meet "at least one of the three requirements listed in Rule 23(b)." *Id.* at 345; *see Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 512 (9th Cir. 2013). Plaintiffs seek to certify a class under Rule 23(b)(3) on the basis that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

The Court's examination of these requirements is not cursory. Rule 23 "does not set forth a mere pleading standard." *Dukes*, 564 U.S. at 350. Rather, "certification is proper only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Id.* at 350–51 (internal quotation marks omitted) (quoting *Falcon*, 457 U.S. at 161). "[I]t may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." *Falcon*, 457 U.S. at 160. This is because "the class determination

generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Id.* (internal quotation marks omitted) (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469 (1978)).

"'[P]laintiffs wishing to proceed through a class action must actually *prove*—not simply plead—that their proposed class satisfies each requirement of Rule 23 . . .' and must carry their burden of proof 'before class certification.'" *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 664 (9th Cir. 2022) (en banc) (alteration in original) (quoting *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 275–76 (2014)). "[P]laintiffs must prove the facts necessary to carry the burden of establishing that the prerequisites of Rule 23 are satisfied by a preponderance of the evidence" through "any admissible evidence." *Id.* at 665.

**B. Sections 14(a) and 20(a) of the Exchange Act**

Section 14(a) of the Exchange Act makes it unlawful to solicit shareholder approval for a transaction by use of a proxy statement that does not comply with the rules and regulations of the SEC. 15 U.S.C. § 78n(a)(1). SEC Rule 14a-9 provides that proxy communications may not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9(a).

To prove a violation under Section 14(a) and SEC Rule 14a-9, a plaintiff must show that "(1) a proxy statement contained a material misrepresentation or omission which (2) caused the plaintiff injury and (3) that the proxy solicitation itself, rather than the particular defect in the solicitation materials, was an essential link in the accomplishment of the transaction." *N.Y.C. Emps.' Ret. Sys. v. Jobs*, 593 F.3d 1018, 1022 (9th Cir. 2010) (quoting *Tracinda Corp. v.*

*DaimlerChrysler AG*, 502 F.3d 212, 228 (3d Cir. 2007)), *overruled on other grounds by Lacey v. Maricopa County*, 693 F.3d 896 (9th Cir. 2012).

Section 20(a) governs "control person" liability. *See* 15 U.S.C. § 78t(a). To establish liability under Section 20(a), Plaintiffs must "(1) prove a primary violation of federal securities law, and (2) 'that the defendant exercised actual power or control over the primary violator.'" *In re Montage Tech. Grp. Ltd. Secs. Litig.*, 78 F. Supp. 3d 1215, 1228 (N.D. Cal. 2015) (quoting *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1065 (9th Cir. 2000)).

## IV. DISCUSSION

### A. Plaintiffs have satisfied the requirements of Rule 23(a).

Defendants challenge Plaintiffs' motion on two of the Rule 23(a) factors—typicality and adequacy. Dkt. 112 at 15–20. The Court finds that Plaintiffs have satisfied both factors.

#### *1. Typicality*

The third requirement of Rule 23(a) is typicality. "The claims of the representative party must be typical of the class claims." *Gonzalez v. U.S. Immigr. & Customs Enf't*, 975 F.3d 788, 809 (9th Cir. 2020) (citing Fed. R. Civ. P. 23(a)(3)). "[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998), *overruled on other grounds by Dukes*, 564 U.S. 338. "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Hanon v. Dataproducts Corp*., 976 F.2d 497, 508 (9th Cir. 1992) (quoting *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985)).

"Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Id.* (quoting *Weinberger v.*

*Thornton*, 114 F.R.D. 599, 603 (S.D. Cal. 1986)). Typicality is a "permissive standard[]," *Hanlon*, 150 F.3d at 1020, but class certification is inappropriate where "there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it." *Rosenberg v. CCS Com., LLC*, No. C17-476 MJP, 2018 WL 3105988, at *6 (W.D. Wash. June 25, 2018) (quoting *Hanon*, 976 F.2d at 508).

Defendants argue that Sohovich is not typical of the class because (1) he is a former employee of Avalara with a "radically unique" experience when compared to the rest of the class;[2] (2) he was going to vote against the sale regardless of any statements in the Proxy, making Sohovich susceptible to a lack-of-causation defense that would not apply to the rest of the class; and (3) he "does not seek the same damages as the rest of the class" because his damages consist of "'future opportunity' and 'future earnings' from Avalara's potential stock growth." Dkt. 112 at 15–18 (quoting Dkt. 113-1 at 16). Defendants ask the Court to consider these facts together. *Id*. at 18. Doing so, the Court finds that Sohovich satisfies typicality.

Sohovich's claims and defenses are not significantly different from those of the rest of the class. First, Sohovich's knowledge from his employment and his intention to vote against the merger do not make him atypical because the proposed class definition does not consider whether someone voted (or intended to vote) for or against the merger. Moreover, Section 14(a) claims do not require Plaintiffs to prove that they relied on the alleged misrepresentations in the Proxy in casting their vote. In other words, Sohovich is not subject to a unique "causation"

[2] Specifically, Defendants contend that Sohovich previously worked for Avalara and acquired his shares when Avalara acquired his former employer. Dkt. 112 at 17–18. "Sohovich negotiated the sale of New Horizons Systems' intellectual property to Avalara and was then employed by the Company for the next two years to help integrate that IP into Avalara's systems." *Id*. at 18 (citing Dkt. 113-1 at 4). According to Defendants, this employment—which took place from 2008 to 2010—gives Sohovich "unique insight into the Company's confidential approach and strategy with respect to M&A." *Id*. at 18; Dkt. 113-1 at 4.

defense because "individual reliance is not relevant" under Section 14(a) and "the question of materiality is an objective one." *Erickson v. Jernigan Cap., Inc.*, 692 F. Supp. 3d 114, 128–29 (S.D.N.Y. 2023) (rejecting the assertion that the plaintiff's "knowledge and experience of the REIT industry and past encounters with the founder of [the defendant company] could impact the materiality determination and threaten to become a focus of the litigation and the subject of unique defenses"); *see also City P'ship Co. v. Jones Intercable, Inc.*, 213 F.R.D. 576, 586 (D. Colo. 2002) ("[T]he fact that the Madison plaintiffs contracted away their right to vote independently does not disqualify them from serving as class representatives. My decision is guided primarily by the fact that individual, subjective reliance by a plaintiff on an alleged misstatement or omission in a proxy statement is not required to state a claim under § 14(a).").

Second, the fact that Sohovich described his losses as "future opportunity" and "future earnings" lost by the sale to Vista does not differentiate his claim from those of the class. Dkt. 113-1 at 16. Plaintiffs propose an "out-of-pocket" damage formula, which is the alleged fair value of stock sold to Vista minus the merger consideration of $93.50 per share that Plaintiffs received. Dkt. 110-2 at 9. According to Plaintiffs' expert, one widely used method of measuring the fair value of a company's shares is the discounted cash flow ("DCF") analysis, which "estimates a firm's value based on its future expected cash flows." *Id*. at 10. In light of this forward-looking damage calculation available to Plaintiffs, Sohovich's testimony that he seeks "future earnings" does not defeat typicality.

2. *Adequacy*

The final requirement of Rule 23(a) is adequacy, meaning that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This inquiry depends on two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute

the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020 (citing *Lerwill v. Inflight Motion Pictures, Inc*., 582 F.2d 507, 512 (9th Cir. 1978)). "The named plaintiffs and their counsel must have sufficient 'zeal and competence' to protect the interests of the rest of the class." *Doe v. Wolf*, 424 F. Supp. 3d 1028, 1043 (S.D. Cal. 2020) (quoting *Fendler v. Westgate-Cal. Corp*., 527 F.2d 1168, 1170 (9th Cir. 1975)).

Defendants argue that Sohovich is an inadequate class plaintiff because he "is not an informed class representative and is not directing this litigation." Dkt. 112 at 20. Defendants cite Sohovich's deposition testimony that he had "[o]nly information that was provided by counsel" about the Proxy's alleged falsity and "ha[d] no idea" whether his interests aligned with other class members. *Id*. (first alteration in original) (quoting Dkt. 113-1 at 26, 32). However, the full deposition transcript[3] indicates that Sohovich is apprised of the claims here and will be able to vigorously prosecute this case. *See* Dkt. 116-1 at 6–8 (discussing Defendants' alleged misrepresentations and opining that Vista's offered price was "not the best deal . . . for stockholders"). As Sohovich notes, this passes the "low bar" required for adequacy. Dkt. 115 at 13 (quoting *Johnson v. Glock, Inc.*, No. 20-CV-08807-WHO, 2024 WL 4479863, at *7 (N.D. Cal. Sept. 30, 2024)).

---

[3] Defendants argue that citations to other portions of the deposition transcript in Sohovich's reply should be disregarded because Sohovich did not raise this evidence in his opening brief. Dkt. 112 at 19–20 n.3. Sohovich need not exhaustively cite every piece of supporting evidence in his opening brief. Defendants discussed the same deposition transcript in their response, so Sohovich was free to quote other portions of it without bringing in "new evidence" inappropriate for a reply brief. *See Fuchs v. SpecialtyCare, Inc.*, No. 3:23-CV-00892, 2025 WL 2797157, at *3 n.3 (M.D. Tenn. Sept. 26, 2025) ("SpecialtyCare objects to Plaintiffs' use of a portion of Bailey's deposition transcript in their Reply, characterizing any reference thereto as a new argument based on new evidence. The objection is overruled because Plaintiffs merely respond to SpecialtyCare's argument based on a different portion of that same transcript." (citation omitted)).

Having found that Sohovich meets the Rule 23(a) requirements, the Court next considers the predominance requirement of Rule 23(b)(3).

**B. Plaintiffs have satisfied the requirements of Rule 23(b)(3).**

Sohovich seeks class certification under Rule 23(b)(3), which provides that a class may be maintained if "questions of law or fact common to class members predominate over any questions affecting only individual members," and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Defendants argue that Sohovich has not shown "that damages are capable of measurement on a classwide basis," meaning that "[q]uestions of individual damage calculations will inevitably overwhelm questions common to the class." Dkt. 112 at 21 (alteration in original) (quoting *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013)). According to Defendants, Sohovich fails to meet the *Comcast* standard because his damage formula (1) is based on the stock's "fair value" and does not include "future opportunity" and "future earnings"; (2) lacks detail regarding expected cash flows; and (3) relies on alleged misstatements that may have been known to institutional investors who had access to the full ISS report. *Id.* at 21–23.

First, as discussed above, one of Sohovich's damage calculation methods includes the forward-looking DCF approach based on future expected cash flows. *See supra* Section IV.A.1. Using this analysis, Avalara's future earnings are considered when determining the alleged fair value of Avalara's shares at the time of the sale. Second, Sohovich's expert provides sufficient detail on his damages formula for this stage of the case. As Plaintiffs note, Sohovich need only provide the level of detail necessary to determine that damages can be measured for the whole class, and he has done so here. Dkt. 115 at 15. Third, the fact that the Proxy contains alleged misstatements which may have been known to some investors does not mean that damages cannot be calculated for the entire class. Plaintiffs are not required to disaggregate damages or

prove loss causation at the class certification stage. *Sjunde AP-Fonden v. Goldman Sachs Grp., Inc.*, 798 F. Supp. 3d 416, 479 (S.D.N.Y. 2025), *leave to appeal denied*, No. 25-2280, 2025 WL 3731055 (2d Cir. Dec. 23, 2025) ("Defendants' argument that Dr. Mason has not proposed how he would disaggregate the confounding news on November 9 and 12 is not a basis to deny class certification. . . . [T]he law is clear that a plaintiff is not required to demonstrate loss causation on a Rule 23 motion." (citing *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 813 (2011))).

Sohovich's damage formula can be applied to the entire class and questions of law and fact regarding the alleged misrepresentations predominate over any questions affecting individual shareholders. The Court therefore finds that Sohovich has met the requirements for class certification under Rule 23(b)(3).

## V. CONCLUSION

The Court GRANTS Sohovich's motion for class certification. Dkt. 109. The Court ORDERS that the following class be certified:

> All persons and entities who held shares of Avalara, Inc. ("Avalara") common stock on the September 8, 2022 record date, who were entitled to vote on the Merger at the Company's Special Meeting of Shareholders on October 14, 2022, and whose shares were acquired by Vista for $93.50 per share on October 19, 2022.

The Court appoints Martin Sohovich as the representative for the class. The Court appoints Pomerantz LLP as class counsel.

Dated this 28th day of August, 2026.

Tiffany M. Cartwright
United States District Judge